Thank you, Your Honors. Good morning. Elaine Ryan, Counsel for Todd Greenberg, Plaintiff Appellant. The issue in this case is if the hair and skin benefit representations on defendant's biotin product labels can be reasonably construed to apply to the supplements themselves in addition to biotin, the nutrient, when you consume it in foods. If that is the case, are plaintiff's state law claims that the labels are false and misleading because the supplements provide no benefits preempted? And the answer is no. Pressler teaches that preemption of false advertising claims only applies if plaintiff seeks to hold defendant to a different substantiation standard than the federal act. And plaintiff here does not seek to do that. If you look at the product label, the front of the label, that which faces the consumer, that which every purchaser necessarily has to see before they buy this product, it says three things on that label. Biotin, right at the top. Right underneath that is the dosage specific to the product you're buying. Either 1,000 micrograms, 5,000 micrograms, or 10,000 micrograms. And then right underneath that is the benefit statement of health support, healthy hair and skin. Because of that, both the federal act and California law require defendant to have substantiation for that. And Pressler says that plaintiff can challenge that substantiation with matching controverting evidence, which plaintiff has done here. Ms. Ryan, can I ask you a question? I guess, do you agree that the defendant's claims that biotin, which is the actual nutrient, supports healthy hair and skin meets the three requirements of the structure function claims under the FDCA? Yes, we agree that it is a structure function claim. So, putting aside your argument that biotin, I guess the supplement, only benefits a tiny portion of the population, what is your strongest argument that the defendant's statement about biotin, the nutrient, is misleading? Because there is nothing on this label that indicates that the benefit statement applies only to biotin when you consume it in food. If you don't consume this in food, and you're buying a supplement, you are not getting any benefit. You're not getting any hair benefit, you're not getting any skin benefit. That is the evidence that the record reflects that the plaintiff has submitted. There's no benefit to this product. The plaintiff testified when he read that label, he interpreted it to mean that the product would be providing the benefit. The consumers are paying $5. Doesn't the FDA rights for structure function claims just refer to the ingredient and nutrient and not the entire product? Well, it's not structure function claim relates, it's the claim that's on the label. And it doesn't just refer to the ingredient. You look at the label and you see what claim is being made on the label. And you look at every reasonable interpretation of that label. And then you determine if those claims are structure function claims. What's your best authority? I guess that's what I'm trying to find out. What's your best authority for that? That somehow attaches to something beyond the nutrient or the base ingredient. Well, I think you would have to go back to the regulation itself where it defines what a structure function claim is. And then you have to read that in conjunction with the regulation that prohibits false and misleading labels in any particular. So it's the combination of those two regulations. I'm looking at one of the structure function claim regs. And it says structure function claims are statements that describe the role of a nutrient or dietary ingredient intended to affect the structure or function of humans. So it seems like it refers to a nutrient or dietary ingredient. And this is what the FDA and Congress has established. And it seems like they're entitled to a preemption if that's the case. I disagree. Because it's not just... You don't just look at the label and say, okay, on the third panel in the back, they have a proper structure function claim as to biotin the nutrient. Okay, that doesn't get them off the hook when they put on the front of the label a representation that can be construed to apply to the supplement itself. And that, the regs say, you can't have a misleading statement on the label. And you can... You look at the label as a whole. You look at each reasonable interpretation of that label. And when you look at the front of that label, it leads to the reasonable interpretation by consumers that you're going to get hair and skin benefits from this product if you buy this product. And the FDA regulations are very clear that a label can't be false or misleading in any particular. And the FDA and the FTC both have put out guidance to the industry that says to determine if a label is false or misleading in any particular, you look at that label as a whole. You not only determine the net impression conveyed by that label, but you determine each reasonable interpretation of that label. And here the reasonable interpretation of that front label is that the supplement provides the benefit. And that is what Plano saw. That is what people are paying money for. People don't pay $5 or more because they think I'm buying a supplement that does nothing for me. Okay, the biotin in food, you know, will help me. I'm buying this supplement because I think, well, this supplement is going to give me some of the benefits too. Does that reasoning apply to much of all vitamins and supplement industry? You know, vitamin C products say helps immunity. That's a structure function claim. And probably most people don't need addition to vitamin C. It is true vitamin C supports immunity, but for most people it's probably just a placebo effect. Would that be actionable? Well, vitamin C is very different from this product. Number one, whether it would be actionable or not depends on what they say on the label. And with respect to the vitamin C product, if you're talking about a vitamin C supplement, what are they saying on that label? Vitamin C supports immunity. But probably for most people, that product is not going to help anybody because we're getting enough vitamin C from other foods. Okay, well, alright, let's just say they just have a plain vitamin C, the ingredient supports immunity. You know, similar to the third panel statement. Then that would be a proper structure function claim considered in isolation. But if on the front of that label they had something like they had here, where it was, you know, the product and then the dosage, and then underneath that they make a benefit statement, well then you have to determine is that misleading or not. Now with vitamin C, that's a very different product than this product biotin here. Here the record evidence is nobody, absolutely nobody other than people that less than 1% of the population who can be identified, who are born with a genetic deficiency disease will derive any benefit from biotin. And those people are identifiable because they test for that at birth and it's less than 1% of the population and it's not who these products are targeted for. Okay, so other than that, biotin does nothing for you. Vitamin C does help people. It helps some, it doesn't help others. Some people need some supplementation, some people don't. Okay, that's very different from a situation in which it's not helping anybody. Our position is not that defendants have to, for every vitamin supplement out there, determine what specific percentage of the population benefits or not. But when you have a product that the only people who can benefit are less than 1% of the population that you can identify, the FTC actually has guidance on that in example 5 of their guidelines. It says you should disclose information relevant to the limited applicability. And they give an example of a multivitamin. And it says that if less than 2% of the general population to which the ad is targeted suffers from this deficiency, the advertiser should disclose that fact. There's no disclosure on this label that biotin is not going to help you in supplemental form unless you are less than 1% of the population who have a biotin deficiency disease. So this product is very different from vitamin C. It's very different from the calcium and the other vitamin D examples CRM puts in their amicus brief, precisely because biotin falls right where within the FTC example in their guidance. Now, if granted, if the defendant had only put that statement that's on the third panel of the label, which the district court focused on, that says biotin, the nutrient in foods, helps promote healthy hair and skin, consider it in isolation. If that was all that was there, we wouldn't have a lawsuit. But they didn't. That's not this case. This case, there's a front of the label. That is where consumers expect. That's where they've been conditioned to see product-specific information. We all have been conditioned for that. On the third panel is where we look for more general information about a product, like its ingredients. But on the front, we expect to see product-specific information. And defendants know that. And on the front of this label, right under the dosage of the product, they make the representation. That ties it to this product and this dosage. And regardless of whether that's a proper structure function claim, it is misleading because it's not true as to this product. And there is a regulation specifically on point, guidance specifically on point, and that is what gets them into trouble here. I'm sorry. No, go ahead, Judge Coyne. So this label has said this will only help 1% of the population. That would have been okay. Yes, if they would have put that on the label, absolutely. Because that would have put consumers on notice that they were buying a product that was going to help less than 1% of the population with one of these biotin deficiency diseases. And your client wouldn't have bought it? Honestly, Your Honor, I didn't ask my client that. But I assume that to be the case because he said he relied on these representations. And had he known the truth, he would not have bought it. I did not put that specific question to him about the disclosure. I can conceivably support what they claimed. And what you're saying is that they should have added that this only would benefit 1% of the population. It seems to me that your client was pretty desperate. And for $5, he would have taken a chance, even if he knew it only would have helped 1%. No, that's not true. First of all, he would have bought it. He had already bought it. As I understand it, this was not a cheap purchase. No, he read and he relied on the representation. And he is on the record under oath in testimony saying, had he known the truth, he would not have bought the product. But apart from that, Your Honor, putting a disclosure would have been one possible way to do that. What is the truth that he said he would not have bought the product? Had he known that biotin in supplement form does not provide any of the benefits on the label, except for that less than 1% of the people with biotin deficiency diseases, he would not have bought the product. And is that what he said? What you just said? Yes, I'm paraphrasing, but yes, that is the gist of his testimony. But I see that I'm close to my time, but I just wanted to say, putting a disclosure on the label would have been one cure, yes. But there were others. You could have just not put what you put on the front panel. You didn't need to make that representation right under the dosage that helps support healthy hair, skin, and nails. So there's a lot of ways they could have done this label so that it would not have been misleading. But they didn't do that. Your complaint is about the front of the label, not the whole label. Well, it is about the whole label, but that includes the front of the label. I thought you said if what was on the back was on the front, then it would have been okay. Well, yes, but you have to look at the whole label, and that wasn't the case. You look at the whole label, and that includes the front panel. But our argument is, yes, it was the front panel that is what is misleading. All right, thank you. You're out of time. I'll maybe give you a minute per rebuttal. Thank you. Mr. Orr. Good morning, Your Honors. My name is Matthew Orr, Counsel for Appellees, Target Corporation, International Vitamin Corporation, Perigold Company of South Carolina. I appreciate the opportunity to present our arguments. I know difficult circumstances. I wish I were in Pasadena with you all. That being said, I'm not sure that I'm going to need my full time. I'm hoping to address a few points and then obviously take any questions that you can address, any questions that this court may have. I think Judge Lee is directly on point in recognizing that this is really a straightforward issue. The issue really is whether 343R6, a company or manufacturer that complies with those requirements with respect to a structure function claim, must also apply or satisfy additional requirements, implied requirements. Section 343R6 specifically talks about a statement that describes the role of a nutrient or dietary ingredient intended to affect the structure of function in humans. And that's exactly what we have here. We've got, there's no dispute in this case that the statement in issue, namely that biotin helps support healthy hair and skin, constitutes a traditional and a classic structure function claim. There's no dispute that the statement does not claim to diagnose, treat, cure, or prevent any disease. Finally, the product labeling has all of the required FDA disclosures. And therefore, this structure function claim satisfies each of the requisites of 343R6. And really, the discussion and analysis should end at that point. However, plaintiffs and appellants here in this case would require additional requirements in addition to those that are expressly set forth in 343R6. And specifically, they would require that a manufacturer as part of the consuming public may have with respect to that ingredient or that dietary supplement, that mineral. Whether the supplement or the mineral would have a material effect on individuals based upon their various diets. And in essence, would require epidemiological studies or survey evidence to determine whether and how broadly a supplement may or may not affect a given population. And that just is not required by the regulation. And as the Council for Responsible Nutrition's amicus brief sets forth, that's an absolute key change in the industry in terms of what is required to make a structure function claim. Can I ask you, Mr. Orr, Mr. Greenberg's expert doctor will testify that humans need, I guess, only about 30 micrograms of biotin a day. And that we actually get 35 to 75 of those micrograms through our diets alone. Do you agree with Mr. Greenberg that the biotin supplement is, I guess, for lack of a better word, a general population? No, I don't think I agree with that at all. And I think that that really highlights the issue in this case. I think the testimony was that individuals may require 30 micrograms, but pregnant women may require 35. I think the testimony also was that this daily allowance has changed over time. And they use the term general population artfully in terms of it doesn't necessarily address the various diets and dietary needs that individuals have in the general population. It's not a homogenous group of people. There are many types of diets that individuals are following. There's ketogenic, there's carnivore, there's intermittent fasting, there's prolonged fasting. And I think that highlights really the fundamental issue in this case. But I could just, because it made me ask it a different way. I mean, if you could consider, you know, Mr. Greenberg's contention that the biotin supplement is basically worthless, you know, for 99.98% of the population and taking into context that the FDCA's goal of protecting consumers, I guess what's your strongest argument that the statement on the products here, biotin supports healthy hair and skin, is not misleading, especially considering people are going to buy these products to get the benefit or the port of benefits stated on the label? Yeah, I guess the first issue and one argument is that, again, it's set forth in the Council for Responsible Nutrition's brief, and I think you mentioned in yours as well, there's a balancing policy. I'm having trouble hearing you. Can you get closer to your mic? Sorry. Thank you. There are balancing policy considerations with respect to a nutrient content and I think the FDA and Congress has characterized those balancing interests and said you've got to make them comply with the strict requirements of 343 and then leave it up to the consumer because supplementation of nutrients is important to the consuming public, and the manufacturer's obligation is to ensure that their structural function claims are substantiated and the consumer's obligation and right and ability to purchase supplements based upon their specific dietary needs, their own health requirements, as well as their own risk tolerance in terms of what they may or may not feel they need or want in their diet and leave it up to the consumer. Now, with respect to whether the expert's analysis in this case is correct or not, I think that highlights really the issue that's in play here, which is if you look at I've got Pressler and Doshauer here sitting side by side on my desk and Pressler does a great job of elucidating and highlighting the issues that are set forth in Doshauer and Pressler, in distinguishing Doshauer in terms of why Doshauer was correctly decided, had we permitted the claim to proceed in Doshauer, we would have forced the defendant to substantiate that supplement also preventing heart disease. That would have held the defendant to burdens of production and the supplement proved different than those required for substance consumption claims under the FDCA. Therefore, the FDCA preempted the plaintiff's claim. So I think what you need to look at here is what is the evidence that we would be required to bring forth moving forward in this case, and is that the type of evidence that's required for all manufacturers of supplements? And in this case, as with every case, we would be required to determine whether the daily allowance is accurate, whether that really is true, that the recommended amount is 30 or 35 or 40 or whatever it may be. There would also have to be, again, studies conducted to see what portion of the general population actually does receive sufficient biotin or glucosamine or vitamin E in their diet. There would have to be that substantiation up front and not posthumously when a lawsuit is filed. And so I think in response to your question, maybe it's a roundabout way, is that I don't think there has to be an analysis of how many people in the population benefit from the product. That's a balancing factor that the FDA and Congress carefully weighed and said as long as the product or the nutrient, as long as you make a claim of a nutrient and its intended effect on the structure and function, that that's sufficient. And it's interesting that in the same exact regulation, FDA and Congress know how to require additional substantiation in certain circumstances. So, for example, if you're making a claim beyond a traditional standard structural function claim like we have here, and you move into a nutrient deficiency claim, which again is not here, then the FDA and Congress would require you to conduct an analysis and say how many individuals in the population have that nutrient deficiency disease, and you've got to disclose that on the label. So FDA and Congress knows how to fashion and require additional substantiation, and notably determining a nutrient deficiency disease in the general population is much easier than trying to figure out whether there's an appropriate daily allowance, whether people are meeting that allowance, what the effect would be if people achieved that allowance. That really would open a teaching to how supplement manufacturers substantiate their product and inject an incredible uncertainty and ambiguity into the entire category. And that is against and contrary to the public policy that's reflected in the regulations, which is supplements are beneficial, supplements should be relatively freely allowed, that the consumer should have the choice and the right and the obligation to make a determination as to whether a supplement helps them. And there are specific guardrails on that, which is if a supplement is harmful, then certainly that's another situation where there needs to be additional disclosure or there may be some fault in access to something. That's not the case here. That's not our view here, and I think that Doshauer absolutely got it right and I think the Press Report got it right on it. And really the difference between those two opinions, and I've got them lined side-by-side here, Robert Frost's column comes to mind, two paths diverge, and the procedural posture is what really made all the difference. Doshauer is a summary judgment motion, and Frostburg is a motion to dismiss. And the Frost Report, I think, reflected some skepticism as to whether there really was a match in evidence on the allegations of the complaint and whether it would survive on summary judgment. But the Frost Report said, well, there may be a mismatch on some of the evidence that's alleged in the complaint with respect to the study, but they're at least, taking all the allegations as the truth, there may be some aspect of a match in evidence with respect to the complaint. And so we're going to allow this to go forward, and you can bring this motion again on a summary judgment. And that's exactly what we're doing here. And I think that there is absolutely a mismatch in the evidence that the plaintiff, or the appellant, would have a manufacturer present in defense of respect to the complaint. And this certainly is not going to, affirming the lower-course order, and it's not going to result in a huge change in claims going against structural function claims. It's very clear that Stoffler goes forward. Hoffman, in the First Circuit, goes forward. Mullins, Judge Seaborg, had companion cases. And Mullins denied the plaintiff's motion to dismiss and granted ours. And there's a difference in terms of what the evidence is presenting there. I see my time is nearly up. I wanted to just, again, and I'm not going to belabor the issue, but this court can affirm the lower-course order on additional grounds that were not reached at the lower court, and that's on grounds of unreasonable alliance. Again, I don't want to belabor the issue here, but I want to make sure that I reinforce that we take that aspect of our briefing seriously, and we think that those are equal and just as strong grounds to affirm the lower-course order. Here you've got an individual with a disease in which he has no eyebrows, no eyelashes, and dramatically thinning hair. And the claim at issue here is health support, healthy hair and skin. And then you've also got the FDA disclosure that this product, biotin, is not intended to treat, diagnose, or cure any disease. And on those grounds, with respect to this specific plaintiff's knowledge, he could not have possibly reasonably relied on those recommendations. If there's no further questions, I appreciate this panel's time and also Ms. Holmgren. Thank you. Ms. Ryan, you have a minute. Thank you, Your Honor. I just want to talk about the ramifications of the judge's ruling, if it's a left to stand. And that is basically that manufacturers have a license to make all sorts of misleading representations about their specific product, as long as somewhere on that label they put a true statement about the ingredient and its nutrient form when you eat it in foods. That's what the ramification of that is. And it is particularly terrible in the context of the federal act. Why is that? Because the FDA does not approve structure function claims. Furthermore, the FTC, or the FDA, in Example 5 of their substantiation guidance, specifically notes that the benefits that you get from nutrients don't necessarily transfer over to supplements. So those are two things. And if allowed to stand, it just turns that on its head. Defendants are basically arguing that you look at the structure function claim as to the ingredient in isolation. But the act has more than just that definition. In Section 343A1, it specifically talks about the label and how it cannot be misleading in any particular. You cannot slice and dice the federal act. It has to be read as a whole. They have to comply with the whole act. I think we have your argument well in hand. Thank you very much, Ms. Ryan. Appreciate it. And, Mr. Orr, appreciate your oral argument presentation as well. The case of Todd Greenberg v. Target Corporation is submitted. The last case on our docket, Zurich American Insurance Company of Illinois v. Acquired, that also has been submitted on the briefs. So that concludes our docket for today. So we'll be adjourned. Thank you.
judges: Murguia, Korman, Lee